Grace CAMPBELL, Plaintiff,

v.

Jack BATES et al., Defendants.

Civ. A. No. 76–394–C.

United States District Court,
D. Massachusetts.

July 15, 1976.

---

Grace Campbell, pro se; Barbara Shapiro, Boston, Mass., for plaintiff.

Terence M. Troyer, Asst. Atty. Gen., Chief, Crim.Appellate Section, East Cambridge, Mass., for defendants.

## OPINION

CAFFREY, Chief Judge.

This matter arises on the petition of Grace Campbell for a writ of habeas corpus, alleging as grounds therefor that she was indicted by a grand jury selected from a list from which women were intentionally excluded, in violation of her rights under the 14th Amendment to the United States Constitution.

Several indictments were returned against petitioner on December 6, 1974 by a Suffolk County grand jury. Prior to trial, on June 3, 1975, petitioner filed a timely motion to dismiss the indictments, based on the 14th Amendment ground now asserted in the instant petition. At the petitioner's state court trial, on the basis of stipulated facts and on the basis of a prior hearing on an identical motion in a different case before the same judge of the Superior Court, petitioner's motion was denied. Petitioner was then tried and convicted of armed robbery, larceny, assault and battery with a dangerous weapon, and unlawful possession of a firearm. Petitioner was sentenced and is presently serving concurrent sentences of 12–15 years and 3–5 years at M.C.I., Framingham. No appeal was taken from the state court convictions.

The respondents are Jack Bates, Superintendent of M.C.I., Framingham, and Frank A. Hall, Commissioner of Corrections for the Commonwealth of Massachusetts.

The stipulation which was admitted in connection with petitioner's motion in the Superior Court established the following facts:

(a) A jury list is prepared annually from which grand jurors are chosen for Suffolk County. Eighty-eight per cent of the names on the list are drawn from a Boston residents' list prepared by the Boston Police.

(b) Once selected, individuals remain on the jury list for three years, or until summoned for jury service, whichever occurs sooner.

(c) The 1973–74 jury list consisted of 73.4% men and 26.6% women. Women were intentionally underrepresented on this list.

(d) In 1973 and 1974 additional names were selected for the jury list by a computer, which was instructed to select two men for each woman chosen for the list.

(e) According to the 1970 United States census, women constituted 54.7% of the Suffolk County population. Women constituted 54.5% of the 1973 Boston residents' list.

Initially it is to be noted that although petitioner has not appealed her convictions to the state courts, the instant petition will not be dismissed for failure to exhaust state remedies as required by 28 U.S.C.A. § 2254. It is settled law that § 2254 does not require exhaustion of state remedies where the precise issue raised by the petition for habeas corpus has recently been decided adversely to the petitioner by the state's highest court. *Sarzen v. Gaughan,* 489 F.2d 1076 (1 Cir. 1973); *Makarewicz v. Scafati,* 438 F.2d 474 (1 Cir. 1971); *United States ex rel. Hardeman v. Wells,* 379 F.Supp. 1087 (D.Mass.1974); *Binkiewicz v. Scafati,* 281 F.Supp. 233 (D.Mass.1968).

Recent decisions by the Massachusetts Supreme Judicial Court clearly establish that any attempt to obtain relief in the Courts of the Commonwealth under the theory asserted herein would be futile. The Supreme Judicial Court has repeatedly held that underrepresentation of women on grand juries *prior* to the United States Supreme Court decision in *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), does not violate the 14th Amendment. *Brunson v. Commonwealth,* Mass.,

337 N.E.2d 895 (1975), 1975 Mass.Adv.Sh. 3292; *Commonwealth v. Daggett,* Mass., 343 N.E.2d 409 (1976), 1975 Mass.Adv.Sh. 552; *Commonwealth v. Morgan,* Mass., 339 N.E.2d 723 (1975), 1974 Mass.Adv.Sh. 3635.

We begin to analyze this petition with the fact, as stipulated, that the petitioner was indicted on December 6, 1974 by a Suffolk County grand jury which was drawn from a list from which women were intentionally underrepresented. She was subsequently convicted on June 19, 1975. On January 21, 1975, in the interim between her indictment and her conviction, the United States Supreme Court decided the case of *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). In that case, the Court held that a Louisiana statute specially exempting women from petit jury service violated the Sixth and Fourteenth Amendments to the United States Constitution. 419 U.S. at 538, 95 S.Ct. 692.

 Petitioner argues that the rationale of the *Taylor* holding regarding petit juries should be extended to grand juries. Even assuming, without deciding, that the constitutional rule regarding petit juries declared in *Taylor* applies to grand juries as well, and that the stipulated underrepresentation of women on Boston jury lists is a violation of that rule,[1] we next face the question of whether *Taylor* should be applied retroactively in view of the Supreme Court's decision in *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975).

In *Daniel,* decided on January 27, 1975, the Court held that

"*Taylor* is not to be applied retroactively, as a matter of federal law, to convictions obtained by juries empaneled prior to the date of that decision." 420 U.S. at 32, 95 S.Ct. at 705.

Petitioner argues that even though her indictment was returned by a grand jury empaneled *before* the *Taylor* decision, the fact that she was convicted by a petit jury empaneled after the *Taylor* decision makes the *Daniel* decision inapplicable to her petition. This precise argument has already been rejected, albeit in dicta, by the Massachusetts Supreme Judicial Court in *Brunson v. Commonwealth, supra.* This Court expressly rules that this petition is controlled by the Supreme Court's reasoning in *Daniel v. Louisiana, supra.*

In *Johnson v. New Jersey,* 384 U.S. 719, 726–735, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), after citing the leading cases on retroactivity the Court said, at 726–727, 86 S.Ct. at 1777: "These cases establish the principle that in criminal litigation concerning constitutional claims, 'the Court may in the interest of justice make the rule prospective . . . where the exigencies of the situation require such an application.' " Later, in *Stovall v. Denno,* 388 U.S. 293, 296–297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, the Court held that there are three factors to be weighed in determining whether a case enunciating a constitutional rule in the criminal law area should be given retroactive effect. They are:

(a) the purpose to be served by the new standards,

(b) the extent of the reliance by law enforcement officials on the old standards, and

(c) the effect on the administration of justice of a retroactive application of the new standards.

Applying these criteria to the facts in the case at bar, I rule that the principle of the *Taylor* case should not be applied retroactively for the same reasons that it was denied retroactive effect in the *Daniel* case. Of primary concern to the Court in this regard is the disruption that would be cre-

---

1. The Louisiana statute declared unconstitutional in *Taylor* operated to almost totally exclude women from jury service. In the judicial district involved in that case 53% of the total population eligible for jury service were women. In the particular parish involved in *Taylor,* no more than 10% of the persons on the jury wheel were women, of the 1800 persons drawn to fill petit jury venires in the pertinent year, only 12 were women, and of the 175 persons on the venire drawn for the month of the trial in question, no women were included.

In the case at bar, women constituted 26.6% of the persons on the 1973–74 jury list.

ated in the Commonwealth's already over-burdened criminal justice system were we to apply *Taylor*, as the petitioner's argument suggests, to cases in which women were underrepresented on grand juries empaneled *before Taylor*, but where the petit jury was empaneled *after Taylor*. I make this ruling assuming without deciding that *Taylor* reaches grand juries as well as petit juries, and assuming still further that the distinction alluded to above between the operation of the invalid Louisiana statute and the operation of the Massachusetts statutes in question herein is not fatal to petitioner's case.

Consequently, the petition for writ of habeas corpus should be denied and the respondents' motion to dismiss the petition for writ of habeas corpus should be allowed.

ORDER accordingly.