**Ronald L. JOHNSON,**
**Petitioner-Appellant,**

v.

**Frank A. HALL and John E. Bates,**
**Respondents-Appellees.**

No. 79–1061.

United States Court of Appeals,
First Circuit.

Argued May 11, 1979.

Decided Sept. 10, 1979.

Edward Berkin, Dorchester, Mass., by appointment of the Court, for petitioner-appellant.

Barbara A. H. Smith, Asst. Atty. Gen., Chief, Crim. App. Section, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen.,

and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Crim. Div., Boston, Mass., were on brief, for respondents-appellees.

Before CAMPBELL, Circuit Judge, BOWNES, Circuit Judge, DEVINE, District Judge.*

DEVINE, District Judge.

This habeas corpus appeal challenges the admission of a confession at a trial which was concluded prior to the decisions in *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Judging the confession in light of the standard of *Procunier v. Atchley*, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971), which applies to such trials,[1] we affirm the district court's decision that it was given voluntarily.

Appellant was convicted in January, 1964, by a Massachusetts jury of first degree murder, armed robbery, and related offenses. It was alleged that on the evening of August 1, 1963, appellant, wearing a mask and armed with a revolver, held up a Boston liquor store and, during subsequent pursuit, shot and killed a Boston police officer. Appellant is currently serving a sentence of life imprisonment. The confession at issue was given to the police during an in-custody interrogation some eight and one-half hours after he was apprehended.

The history of appellant's challenge is fully set out in the opinion of the district court, *Johnson v. Hall*, 465 F.Supp. 516 (D.Mass.1979) and so we need only sketch it out briefly. Before trial, defense counsel objected to the admission of the confession on the sole ground that it was coerced by the application of physical force by the police. Evidence to support that contention was presented at a lengthy *voir dire*, but the trial court found it unpersuasive. In

---

* Of the District of New Hampshire, sitting by designation.

1. *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v.* *Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), do not apply retroactively. *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

ruling it admissible he stated orally, "I am not satisfied from the evidence that it was not freely and competently given. . ."

On October 1, 1964, in reliance on *Escobedo, supra,* decided subsequent to his conviction, appellant moved for a new trial alleging that his confession should have been excluded because it was made while he was without counsel. After conducting an evidentiary hearing, the trial judge denied the motion. In his "Findings, Rulings and Order" he distinguished this case from *Escobedo* on the basis of his finding that appellant had not requested and had not been denied opportunity to consult counsel.

The Supreme Judicial Court of the Massachusetts affirmed the conviction. *Commonwealth v. Johnson,* 352 Mass. 311, 225 N.E.2d 360 (1967). In the course of its opinion, the court noted: "When the statement was sought to be introduced at trial, it was prima facie voluntary. The burden was on the defendant to show that the statement was not voluntarily made." 225 N.E.2d at 363 (citations omitted). As to the appellant's contention that the trial judge should have considered several factors which would have required a finding of voluntariness—failure of the police to warn appellant of his rights and appellant's mentality and physical condition at the time the confession was made—the court concluded that the failure to raise those factors at either the *voir dire* or the trial foreclosed the issue on appeal. The court went on, however, to note that the trial court had indeed considered those factors and that "[t]he judge's extensive findings of fact show that he was not required, as a matter of law, to conclude that the ɔtatement was involuntarily given." 225 N.E.2d at 365.

Certiorari was granted but, following oral argument, was dismissed as improvident. *Johnson v. Massachusetts,* 390 U.S. 511, 88 S.Ct. 1155, 20 L.Ed.2d 69 (1968). In July 1976[2] appellant filed his petition for a writ of habeas corpus, which was denied. The same issues are before us on appeal from the district court's denial of the writ.

On appeal, appellant raises three arguments. His first is that the trial court violated his due process rights by failing to consider the "totality of the circumstances" in ruling on the voluntariness of the confession, as required by *Procunier, supra,* 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524, which sets out the due process standard of voluntariness applicable to cases before the Supreme Court's decisions in *Escobedo, supra,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and *Miranda, supra,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694:

> The question was whether the will of the defendant had been overborne so that the statement was not his free and voluntary act, and that question was to be resolved in light of the totality of the circumstances.

400 U.S. at 453, 91 S.Ct. at 489.[3] Appellant's second contention is that the rule of *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), that a state must prove a confession voluntary by a preponderance of the evidence before it can be admitted at trial, applies retroactively, and that error was committed when the admissibility of his confession was decided under Massachusetts' pre-*Lego* rule, which placed the burden on the defendant to prove involuntariness. *Commonwealth v. Tuckerman,* 10 Gray 173, 194 (1857); *Commonwealth v. Congdon,* 265 Mass. 166, 197, 165 N.E. 467 (1928); *Commonwealth v. Sheppard,* 313 Mass. 590, 48 N.E.2d 630 (1943).[4] Finally,

---

**2.** The time interval is explained on the basis that the death sentence had initially been imposed and later commuted to life imprisonment, and appellant did not wish to risk the "grisly choice" that a successful further appeal might well have led to a retrial and death sentence. *Fay v. Noia,* 372 U.S. 391, 440, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

**3.** The district court found that the trial court had considered the "totality of the circum-

stances" even though it had not invoked that "catch phrase". 465 F.Supp. at 520. Thus the district court found it unnecessary to rule on whether a trial court's failure to consider the totality of circumstances may amount to constitutional error.

**4.** Although this issue was not argued to the state courts, the district court concluded that appellant had "provided the Massachusetts courts with an opportunity to apply controlling

appellant argues that his confession was involuntary as a matter of law.

We find it unnecessary to decide the issues raised by appellant's first two arguments. Because the facts surrounding appellant's confession are undisputed and only the legal conclusion to be drawn from them under the proper constitutional standards is at issue, we are to make an independent determination of voluntariness under the "totality of the circumstances" standard. *Davis v. North Carolina*, 384 U.S. 737, 741–42, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); *Makarewicz v. Scafati*, 438 F.2d 474, 477 (1st Cir. 1971), *cert. denied*, 402 U.S. 980, 91 S.Ct. 1685, 29 L.Ed.2d 145 (1971);[5] *See Procunier, supra*, 400 U.S. at 451–52, 91 S.Ct. 485. And because our independent determination leads us to conclude that the confession must be considered voluntary even under the *Lego* standard, we see no reason to address appellant's claims that *Lego* is retroactive and that the trial court failed to consider the totality of the circumstances. Thus we focus on appellant's third contention, that his confession was involuntary as a matter of law.

The following facts are undisputed.[6] Following the shooting, which occurred at about 9:00 P.M. on August 1, 1963, police pursued and fired at the car which appellant was driving. During the course of the chase, appellant's car went off the road, struck a masonry wall and careened off it, "banged up" against several other cars, and finally collided with an MTA bus. At that point, the injured appellant left the car and ran limping into an alley and over a barbed wire fence. Shortly afterward, at about 9:30 P.M., he was taken into custody after a brief "wrestle". He was taken to a police division where he was booked. At that time he was bleeding from a cut on the right side of his head. During booking he was belligerent and uncooperative. He struggled with and cursed at the police who were holding him. Several other police officers and newspaper reporters were present. The booking room was noisy and photographs were being taken with flashbulbs going off in the process. When he was shown a printed form entitled "Prisoner's Right to Use Telephone", he refused to sign it and declared that he knew his rights.

Shortly after 10:15 P.M. he was taken to police headquarters. Between midnight and 4:00 A.M., August 2, he was in four line-ups. There was some evidence that at one point there was a "commotion" when appellant was brought into the line-up room; he seemed to be "pushed" into the room. Appellant, a black man, appeared in the line-ups with other black men and several white men. Only appellant had torn clothing and blood on his face or head. None of the others had a build similar to appellant. Upon being identified by various witnesses during the course of the night, he was asked by the investigating detective if he had anything to say.[7] He responded on several occasions with questions to the witness, challenging the accuracy of the identification.

legal principles to the facts bearing upon his constitutional claim, satisfying the exhaustion requirement set out in *Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)". 465 F.Supp. at 522–23.

**5.** Notwithstanding the substantial evidence against appellant as well as his statement at the *voir dire* that the confession was true and his statement to the jury that, "All the evidence which the prosecutor presented to you was true," the harmless error rule is not applicable in the face of a voluntariness challenge. *See Chapman v. State of California*, 386 U.S. 18, 23, & n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Miller v. State of North Carolina*, 583 F.2d 701 (4th Cir. 1978).

**6.** Appellant stipulated to the fact findings by the trial court. Thus, even assuming that the trial court applied an incorrect legal standard in determining voluntariness, we are not relying on "tainted" facts. *See Procunier v. Atchley*, 400 U.S. 446, 451, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971); *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Rogers v. Richmond*, 365 U.S. 534, 548, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

**7.** There was evidence that during one of the line-ups there was a conversation between the detective and appellant which lasted fifteen or twenty minutes.

At about 5:50 A.M. he was interrogated for about forty minutes by the detective. Present were two other officers and the police stenographer. The recorded answers to the questions constitute the contested confession. Appellant never requested to consult with counsel; but although he was never denied the opportunity, neither was he advised of his right to do so. He was never given the now so-called *Miranda* warnings.

The record also shows that in the course of the evening as many as 100 police officers were "in contact with" appellant: There were seven or eight in the robbery squad room; there were dozens "in the corridor"; and, there were between forty-five and one hundred in the line-up room.

Later in the morning of August 2 at the Charles Street Jail, it was found that there was a discolored ("ecchymotic") area below his left eye, abrasion of his right thigh, and a scalp laceration. On August 16 it was found that he had a subdural hematoma, "a collection of blood between the dura and the brain itself", which in the opinion of the operating surgeon, "could have been there anywhere from one or two weeks".

At the time of his arrest, appellant was twenty-nine years old with a sixth grade education and an I.Q. of 86.

■ The test of voluntariness is whether the confession was "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897). *See Hutto v. Ross*, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Appellant argues that his confession must necessarily be found involuntary due to the coercive effect of the combination of the following factors: his lack of sleep; his limited education and reduced mentality; his injured state; his presence alone with many police officers; "suggestive and incriminating" lineups; and, the failure of the police to warn him of his rights.

We agree with the district court that "[i]nterrogating an injured defendant of low intelligence at 5:00 a. m. without informing him of his rights invites a skeptical reaction." 465 F.Supp. at 521. And it is indeed true that many of the factors cited by appellant have been found by the Supreme Court to be significant in the determination of involuntariness. But a litany of those cases here would be uninstructive: The question to be asked is whether appellant's confession was "the product of an essentially free and unconstrained choice." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 2047, 36 L.Ed. 854 (1973); *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). As appellant himself notes, "the process of decision in this area . . . requires more than a mere color-matching of cases. . ." *Reck v. Pate*, 367 U.S. 433, 442, 81 S.Ct. 1541, 1547, 6 L.Ed.2d 948 (1961). And "[t]he significant fact about all of [those] decisions is that none of them turned on the presence or absence of a single controlling criterion; each reflected a careful scrutiny of all the surrounding circumstances." *Schneckloth, supra*, 412 U.S. at 226, 93 S.Ct. at 2047. As we noted in *Makarewicz, supra*, 438 F.2d at 478, the "question in each case is whether the defendant's will was overborne *at the time he confessed*." *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963) (emphasis ours).

Thus, factors such as low intelligence and failure to advise of the right to remain silent are not in themselves coercive. "Rather they [are] relevant only in establishing a setting in which actual coercion might have been exerted to overcome the will of the suspect." *Procunier, supra*, 400 U.S. at 453–54, 91 S.Ct. at 489 (citations omitted).

The record indicates that appellant was no stranger to police stations or to police questioning. *Cf. Lynumn, supra*, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 822. In 1956, he was arrested for a motor vehicle violation. He was booked and told that he had the right to use the telephone, which he declined. He spent the night in a cell in the

police station and the following morning he pleaded guilty and was fined. In 1958, he was charged with assaulting a police officer with a dangerous weapon. After a trial lasting several days, at which he was represented by counsel, he was acquitted. In 1959, he was charged with disorderly conduct. Upon arrest, he refused to identify himself, declaring to the police that he was not required to do so. He was put in a patrol wagon and taken to the police station where he was held overnight. He appeared in court the next morning, pleaded guilty and was fined. In 1963, he was questioned by police in Providence, Rhode Island, and Boston concerning a liquor store hold-up, during which a woman employee dropped dead of a heart attack. In Providence the questioning took place at police headquarters and lasted from 4:30 in the afternoon until 9:00 or 9:30 in the evening. He was then held overnight in state police barracks and released the next morning. At Boston Police Headquarters he was questioned by Providence Police in the robbery room where, several months later, appellant was first brought in the instant case. He was never charged in connection with that robbery.

Appellant's attitude toward the police may be fairly characterized as hostile. His contacts with police have been marked by belligerent disrespect, vigorous resistance and assertions that he knew his rights. With due regard for his level of intelligence and education, it is clear that appellant is not the sort of individual who is cowed by the mere fact of police contact. At the time of his arrest he had already survived one trial and had seen that even compre-

hensive police questioning does not automatically lead to prosecution. In light of these experiences as well as the trial court's finding that appellant had not been physically abused by the police, it cannot be assumed that appellant would conclude that interrogation, once commenced, would continue until he confessed.

On the contrary, we conclude that, in light of appellant's previous experiences with the police, the events of the eight and one-half hours prior to his confession did not cause him to confess involuntarily. To assume that appellant was unduly intimidated[8] by the circumstances would be inconsistent with appellant's own conduct during the line-ups, where the largest number of police were congregated. His questioning of witnesses at least suggests that he perceived the significance of accurate identification. The fact is that appellant's forty-minute interrogation/confession followed a series of line-ups during which he was identified as the man responsible for the robbery and the shooting. Confrontation with incriminating evidence does not amount to coercion. *See, e. g., Makarewicz, supra,* 438 F.2d 474.

We next turn to the role played by appellant's injury. In addition to the symptoms we adverted to earlier, there is evidence that appellant fainted and vomited sometime while he was in police custody. But because the police were not responsible for either inflicting his injuries or threatening him with harm,[9] we must look beyond the mere fact of injury. *See United States ex rel. Russo v. State of New Jersey,* 438 F.2d 1343 (3d Cir. 1971); *cf. Beecher v. Alabama,*

---

8. We note that the voluntariness of a confession cannot be equated to the absolute absence of intimidation. Such would amount to a "but-for" test:

"[I]f 'voluntariness' incorporates notions of 'but-for' cause, the question should be whether the statement would have been made even absent inquiry or other official action. Under such a test, virtually no statement would be voluntary because very few people give incriminating statements in the absence of official action of some kind."

*Schneckloth v. Bustamonte,* 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973) (cita-

tions omitted). *See also Hutto v. Ross,* 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976).

9. Appellant testified at the *voir dire* that all his injuries were inflicted by the police and that he fainted and vomited during the course of a beating. The trial judge found appellant's testimony "to the effect that he was beaten by police officers and that he gave the statement . . . unwillingly and only because he was beaten by the police, or threatened with physical harm . . . unreliable and not believable."

389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967). There was also evidence that he was seen by a doctor shortly after booking[10] and that during the time he gave his confession he appeared to be alert and never lost consciousness. In any event, the degree to which appellant was suffering from physical injury did not prevent him from offering physical and verbal resistance to the police at booking, from participating in the line-ups, or from questioning line-up witnesses.

Finally, in light of the relatively short time between arrest and confession, we accord little weight to the facts that appellant had not slept and had eaten little. *Cf. Greenwald v. Wisconsin*, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); *Clewis v. Texas*, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); *Davis v. North Carolina, supra*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958).

Appellant contends that his confession is evidence that he was not "in command of the situation", that if he had been in control he "surely would have known that he would get himself deeper in trouble by admitting guilt", but to so maintain is to assume that no confession is ever voluntary. Upon a careful review of the entire record and consideration of the totality of the circumstances, we conclude that the confession was not the product of an overborne mind; it was given voluntarily.

*Affirmed.*

---

**10.** Although the State presented evidence that the doctor cleansed the head wound and placed a band-aid on it, appellant testified that he had been examined only visually and that at the time he was not aware that the person examining him was in fact a doctor.