**UNITED STATES of America, Appellee,**

**v.**

**Donald BIENVENUE, Appellant.**

**No. 79–1657.**

United States Court of Appeals,
First Circuit.

Argued June 5, 1980.

Decided Sept. 30, 1980.

John C. Boeckeler, Concord, N. H., with whom Cullity & Kelley, Manchester, N. H., was on brief, for appellant.

Robert J. Lynn, Asst. U. S. Atty., Concord, N. H., with whom William H. Shaheen, U. S. Atty., Concord, N. H., was on brief, for appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Circuit Judge, and BOYLE, District Judge.*

FRANCIS J. BOYLE, District Judge.

The Defendant, Donald Bienvenue, has appealed from his conviction of conspiracy to import cocaine. Appellant was convicted by a jury and sentenced to seven years imprisonment and a special parole term of three years.

On February 14, 1979, Appellant's wife, Susan Bienvenue, was arrested upon her return from Bogata, Colombia, by a customs inspector at the Miami International Airport in Miami, Florida, for possession of cocaine. Susan Bienvenue was accompanied by the couple's three year old son, Brian. Susan and her son Brian had over one pound of cocaine concealed in three pairs of shoes packed in their luggage and in the shoes they were wearing.[1] Shortly after being placed under arrest, Susan asked if she could call her husband, adding "he's expecting my call." The customs inspector refused the request.

Agents from the Drug Enforcement Administration took custody of Susan, the five pairs of shoes and cocaine, and the passports and airline tickets of Susan and Brian. The face of the tickets revealed that they were issued by a travel agency in Manchester, New Hampshire. The Drug Enforcement Administration agents asked Susan if her husband would be able to come down to Miami that evening to pick up the boy, and Susan, who earlier had reported that her husband was a Manchester Police Officer, indicated that she did not know whether her husband could make the trip. The Drug Enforcement Administration agents then called an agent of the Drug Enforcement Administration in Manchester, who arranged to meet with the Appellant at the Manchester Police Station.

When the Manchester Police first requested that the Appellant come to the station, the Appellant stated that he could not come right then because he was expecting an important phone call. After the Manchester Police informed the Appellant that his wife had been arrested in Miami and the Appellant informed the Manchester Police that he was getting Kelle McGranoghan as a baby–sitter for his other child, the Appellant went to the station. He was not arrested or searched, but he was read his rights prior to any questioning. The Appellant denied any knowledge of his wife's trip to Colombia, and stated that after he had an argument with his wife, she went to Chicago. In response to further questioning, Appellant admitted that he had been to Colombia once in either November or December of 1978, and that he had booked the trip through an unidentified Manchester travel agency. Although the original purpose of the agents' investigation was to secure the Appellant's cooperation in persuading his wife to make a controlled delivery of the cocaine to the ultimate recipient, after learning of his trip to Colombia, the agents informed him that he was

* Of the district of Rhode Island, sitting by designation.

1. Susan Bienvenue pleaded guilty on April 23, 1979, to importing cocaine.

suspected of conspiracy to import cocaine. The Appellant then left the station to consult with an attorney. Appellant alleges that he requested a telephone number where his son could be reached, and that his request was denied in an effort to coerce his cooperation.

That evening, the Manchester Police obtained and executed a state search warrant for the Appellant's residence. During the search the officers seized a blank passport application and airline ticket stubs covering two prior trips. to Columbia made by the Appellant. These tickets showed on their face that they were booked through different travel agencies from the one used by the Appellant's wife. Canvassing of the travel agencies in Manchester revealed that Donald and Susan Bienvenue, Dennis Therrien, and Kelle McGranoghan had made a total of five trips to Colombia booked through various travel agencies with a sixth trip planned for March, 1979.[2]

Other evidence introduced at trial included a taped phone call between Appellant and Therrien, testimony that Appellant had signed the passport applications of his wife and son which indicated they were going to Colombia, and testimony that on the day his wife flew to Colombia he told another baby–sitter that he was going to Therrien's house where he was expecting a call from his wife. Dennis Therrien was a Manchester Fire Department dispatcher, and Appellant telephoned Therrien at work on a tape recorded telephone line[3] shortly after his departure from the police station where he had learned that his wife had been arrested in Florida. This tape was played at trial, and in the conversation Appellant stated that it "didn't look good" and that the police were "trying to nail me for conspiracy." One of Therrien's co–workers transferred the call to a private line, and Therrien continued the conversation for another fifteen to twenty minutes in a different room. After this call, Therrien placed two outgoing calls and left work prior to the end of his shift, saying he was sick.

Appellant presents four issues to this Court on appeal. First, Appellant contends that the District Court erred in failing to suppress the statements he made to the Government at the initial interview in the Manchester Police Station because these statements were coerced in violation of his fourth amendment rights through the denial of his request for a telephone number to contact his son. Next, Appellant contends that the travel records of the various agencies which gave the police the names of other travel agencies and informed them of his other trips were improperly admitted as the fruit of an unlawful search of his apartment. Defendant also argues that his wife's statement to the customs inspector indicating the Appellant was expecting her call was improperly admitted under Rule 804(b)(5) of the Federal Rules of Evidence and was a denial of his sixth amendment right of confrontation. Lastly, Appellant contests the District Court's ability to impose a special parole term in a conspiracy violation under the Comprehensive Drug Abuse Prevention and Control Act. The Government contends that the statements by the Appellant were voluntary, that the travel agency records were obtained from an independent source or under the inevitable discovery doctrine, that the wife's statement was properly admitted, and that the District Court may impose a special parole term for a conspiracy violation of the Comprehensive Drug Abuse Prevention and Control Act.

Appellant's first claim concerns the voluntariness of the statements given to the Government at the initial interview in the Manchester Police Station. Appellant does not contend that the interrogation of the Appellant was custodial interrogation, and the dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are therefore inapplicable. However, "noncustodial interrogation might possibly in some situations, by virtue of some special circum-

---

**2.** After the Appellant's trial, Dennis Therrien and Kelle McGranoghan pleaded guilty to conspiracy to import cocaine.

**3.** All telephone calls to the fire department dispatchers are recorded.

stances, be characterized as one where 'the behavior of . . . law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self–determined . . . .'" *Beckwith v. United States*, 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1 (1976) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961)). In such circumstances, statements are involuntary if, "considering the totality of the circumstances, the free will of the witness was overborne." *United States v. Washington*, 431 U.S. 181, 188, 97 S.Ct. 1814, 1819, 52 L.Ed. 238 (1977). "When such a claim is raised, it is the duty of an appellate court . . . 'to examine the entire record and make an independent determination of the ultimate issue of voluntariness.'" *Beckwith v. United States, supra*, 425 U.S. at 348, 96 S.Ct. at 1617 (quoting *Davis v. North Carolina*, 384 U.S. 737, 741–742, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966)). Because in this instance the undisputed facts are dispositive, it is only necessary that we consider those facts in our independent determination of the voluntariness of the Appellant's statements. *Johnson v. Hall*, 605 F.2d 577, 580 (1st Cir. 1979); *Makarewicz v. Scafati*, 438 F.2d 474, 477 (1st Cir. 1971). *See also Procunier v. Atchley*, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971).

■ In the present case we are satisfied that the statements made by the Appellant at the initial interrogation in the Manchester Police Station were voluntarily given. The following facts are undisputed. Appellant was a Manchester Police Officer and his interrogation took place within the familiar surroundings of his place of employment. No threats of force or disciplinary action were used, and the Appellant voluntarily came to the station and was free to leave at any time. In fact, when the Appellant became the focus of the interrogation, he was allowed to leave the station, at his request, to consult with an attorney. Appellant disputes the Government's version of the interrogation and contends that his free will was overborne by "psychological coercion" resulting from the withholding of

a telephone number where his son could be contacted coupled allegedly with representations made by the police that his son was in a state of traumatic shock. However, even accepting the Appellant's version as accurate, the totality of the undisputed circumstances, especially in the light of Appellant's ability to leave the station, establishes that the statements were voluntarily given and that the Appellant's free will was not overborne by "psychological coercion." The only disputed evidence of "psychological coercion" stems from the Appellant's own testimony. Apart from our holding that the undisputed facts show the voluntariness of the statement, this Court cannot accept an assertion of such mental infirmity on the part of a police officer with years of experience who is being questioned at his place of employment.

■ The Appellant's next contention is that the evidence obtained as a result of the illegal search of the Appellant's residence was improperly admitted against him during his trial. The Government admits that the search of the Appellant's residence was unlawful, but contends that the records obtained from the various Manchester travel agencies were properly admitted under either the independent source rule or the inevitable discovery doctrine. Evidence obtained directly or indirectly from a violation of the fourth amendment is not admissible against an accused at trial. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, the exclusionary sanction of this "fruits of the poisonous tree" doctrine has several exceptions, including the independent source rule, *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), and the inevitable discovery doctrine, *Owens v. Twomey*, 508 F.2d 858 (7th Cir. 1974); *see United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

■ Appellant contends that the ticket stubs, receipts, and boarding passes for the two previous trips made by the Appellant to Colombia were used to discover the records

of the various travel agencies, which were introduced at the Appellant's trial. However, prior to the execution of this search warrant the Government was aware that the Appellant's wife had booked her trip through a Manchester travel agency, and that the Appellant himself had traveled to Colombia with tickets issued by an unidentified Manchester travel agency. Additionally, the Miami Customs' records contained Customs Declarations for each participant of each trip. These pieces of information constituted independent sources. Not only would routine police investigation of these independent sources have uncovered the fact that the Appellant and his wife booked their trips through separate travel agencies, but such investigation would have uncovered that the Appellant had in fact made two trips rather than the one to which he admitted and that Therrien and McGranoghan were also involved. These circumstances, without regard to the information obtained pursuant to the unlawful search warrant, would inevitably have caused the Government to canvass all the travel agencies during routine police investigation to determine the exact scope of the operation. In fact, the government not only canvassed the travel agencies which were reflected on the tickets seized in the Appellant's residence, they also canvassed virtually all the travel agencies in Manchester. The scope of this investigation lends credence to the Government's contention that the travel agency records would have been inevitably discovered during routine police investigation. Because the Government had adequate independent information to uncover the travel records prior to the execution of the unlawful search warrant, and because routine police investigation based upon these independent sources of information would have inevitably lead to the discovery of the travel records, the Appellant's contention cannot be sustained.

▮▮ Appellant also contends that the admission of the statement his wife made to the customs inspector was improper under the Federal Rules of Evidence, Rule 804(b)(5), and denied the Appellant his sixth amendment right of confrontation, where the wife claimed her fifth amendment right against self–incrimination and was not available for cross–examination. Certain types of evidence may be admissible under the Federal Rules of Evidence but may still deny the accused his sixth amendment right to confront the witnesses against him. *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Conversely, certain types of evidence may violate the Federal Rules of Evidence but will not result in a denial of the right of confrontation. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). In the present case, Appellant argues that he has been denied his right to confront the witnesses against him, because the statement his wife made to the customs official does not have "indicia of reliability" required under *Dutton v. Evans, supra*, and because the Government could have overcome the wife's fifth amendment claim with little cost to itself by granting her immunity. The Appellant cites *United States v. Yates*, 524 F.2d 1282 (D.C.Cir.1975), for the latter proposition. A rather similar proposition was recently advanced in *United States v. Davis*, 623 F.2d 188 (1st Cir. 1980), but, as in that case we need not here decide to what extent, if at all, we agree with the decisions of some other courts to the effect that due process may sometimes require the government to request immunity for witnesses. If there has been any error of constitutional significance by the admission of the statement, the error was harmless error beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

When an error deprives a defendant of a fundamental constitutional right, that error must be harmless beyond a reasonable doubt in order to sustain a verdict based on that error. *Harrington v. California; Chapman v. California, supra.* The customs inspector testified only that the wife stated her husband was expecting her call. This statement was equivocal, and had no mean-

ing until connected with other evidence concerning the Appellant's knowledge of his wife's travel plans which alone was adequate to convict the Appellant. The Defendant's statements to a baby–sitter and the Manchester Police that he was expecting his wife to call, were introduced at trial, and the wife's statement merely corroborated this testimony. Additionally, there was evidence that three days prior to the wife's trip, the Appellant signed the passport applications of both his wife and son indicating their trip was to Colombia, and evidence that the Appellant told the Police his wife had left for Chicago on her own after an argument but had told the baby–sitter that he had dropped his wife off at the airport with two free tickets to Chicago. The Appellant's own telephone conversation with Therrien concerning the Government's conspiracy case is further evidence of the Appellant's knowledge of his wife's activities. In the light of this evidence concerning the appellant's knowledge of his wife's travel plans, the impact of the wife's statement was slight. Under these circumstances, the admission of the wife's statement, if it was an error, when compared with the more than adequate other evidence of the Appellant's knowledge would be harmless error beyond a reasonable doubt.

■ The last issue which the Appellant raises concerns the District Court's ability to impose a sentence with a special parole term for a conspiracy violation of the Comprehensive Drug Prevention and Control Act [hereinafter Act], 21 U.S.C. § 963. Section 960(b) of the United States Code provides the penalties a court may impose for the offenses of importation or exportation of a controlled substance. This section provides, "[i]f a sentence under this paragraph provides for imprisonment, the sentence shall include a special parole term of not less than three years in addition to such term of imprisonment." 21 U.S.C. § 960(b)(1). The Appellant was convicted of a violation of 21 U.S.C. § 963 which provides that a conspiracy to import or export a controlled substance "is punishable by imprisonment or fine or both which may not exceed the maximum punishment pre-

scribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 963. Appellant contends that the special parole term is a separate and distinct punishment for the substantive violation under the plain language of the Act, and may not be imposed for a conspiracy violation of the Act.

In *Bifulco v. United States,* 447 U.S. ——, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), the Supreme Court held that a special parole term may not be imposed for a violation of 21 U.S.C. § 846. Prior to the Supreme Court's decision, the weight of the authority sanctioned the imposition of a special parole term for a conspiracy violation under either 21 U.S.C. § 846 or 21 U.S.C. § 963. *Bifulco v. United States,* 600 F.2d 407 (2d Cir. 1979); *United States v. Burman,* 584 F.2d 1354 (4th Cir. 1978); *United States v. Jacobson,* 578 F.2d 863 (10th Cir. 1978); *United States v. Rich,* 518 F.2d 980 (8th Cir. 1975); *United States v. Dankert,* 507 F.2d 190 (5th Cir. 1975). *But see United States v. Mearns,* 599 F.2d 1296 (3d Cir. 1979); *Fassette v. United States,* 444 F.Supp. 1245 (C.D.Cal.1978). The District Court followed the majority view. At the time the District Court ruled, it did not have the benefit of the Supreme Court's later apparent resolution of this conflict. Thereafter, the Supreme Court appears to have adopted the minority view.

The language of 21 U.S.C. § 846, the conspiracy provision of the Act's subchapter on Control and Enforcement, is identical to the language of 21 U.S.C. § 963, the conspiracy provision of the Act's subchapter on Import and Export. Each subchapter also contains a penalty provision mandating the imposition of a special parole term for certain violations of the substantive provisions of that subchapter. *See* 21 U.S.C. §§ 841(b)(1) and 960(b)(1). Because of the identical language used by Congress in § 846 and § 963, and because of the similarity between the penalty provisions of each subchapter, the reasoning of the Supreme Court which disallowed the imposition of a special parole term for a violation of § 846, is equally applicable to a violation of § 963,

and the decision of the Supreme Court in *Bifulco v. United States, supra,* is controlling.[4] Therefore, the imposition of a special parole term on the Appellant for his violation of 21 U.S.C. § 963 cannot be sustained. The judgment of the District Court is reversed on this issue, and the case is remanded to that court with instructions to vacate the Appellant's special parole term.

*Judgment Affirmed In Part And Remanded In Part.*

4. We find nothing in the legislative history of the Act which suggests a different conclusion with respect to § 963 then that reached by the Supreme Court with respect to § 846. *See* *Bifulco v. United States,* ─── U.S. ──────, ─────── , 100 S.Ct. 2247, 2254, 65 L.Ed.2d 205 (1980).