**Glen GRAYSON, by his next of friend John Grayson, Plaintiff, Appellant,**

v.

**Kessler MONTGOMERY et al., Defendants, Appellees.**

**No. 7406.**

United States Court of Appeals, First Circuit.

Heard Dec. 3, 1969.

Decided Feb. 12, 1970.

Michael L. Altman, Boston, Mass., with whom Richard A. Glickstein, Boston, Mass., and Lois Schiffer were on brief, for plaintiff-appellant.

Lawrence P. Cohen, Deputy Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., and John Wall, Asst. Atty. Gen., Chief, Criminal Division, were on brief, for defendants-appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

After misdemeanor convictions in a Massachusetts state court, plaintiff Grayson sought equitable relief in federal district court under the Civil Rights Act, 42 U.S.C. § 1983. Named as defendants were the clerk and judges of Roxbury District Court, who had allegedly coerced plaintiff into waiving the right to appeal his convictions. The court below held an evidentiary hearing, but concluded that plaintiff's suit was in essence a petition for habeas corpus and dismissed because of plaintiff's failure to comply with the exhaustion requirements of 28 U.S.C. § 2254(b).

The gravamen of plaintiff's complaint is that officials of the Roxbury District Court employed threats of immediate imprisonment and heavier sentences to force plaintiff to withdraw appeals from his convictions on two counts of assault and battery and one of trespass. In the Massachusetts two-tiered system, such misdemeanor charges are tried first in District Court by a judge sitting without a jury. Defendants who desire a jury trial must appeal their convictions to Superior Court, where they receive a trial de novo. Mass. Gen. L., c. 278, §§ 2, 18.

In his complaint, plaintiff alleges that he was sentenced in open court to concurrent suspended sentences. When, however, he announced his intention to appeal, plaintiff claims that his case was recalled, his suspended sentences were revoked and new sentences imposed, and he was ordered held in lieu of $300 bail —all in the absence of his counsel, who had left the courthouse thinking that only a few clerical details remained to perfect his client's appeal. Plaintiff alleges he then withdrew his appeals, thereby securing his immediate release and reinstatement of his original sentences. The clerk of District Court has since refused to process plaintiff's request for an appeal.

In their answer, defendants disputed this version of the facts, claiming that the various sentences in question were raised during plea bargaining between defense counsel and the court, and that defense counsel chose to leave the court before final sentence was imposed. During the evidentiary hearing, however, the clerk of Roxbury District Court admitted that defendants were regularly forced to waive their appeal in order to obtain suspended sentences, apparently because of a restrictive interpretation of the Massachusetts statute authorizing suspended sentences.[1]

1. On appeal, the defendants maintain that their conduct is justified by Mariano v. Judge of District Court, 243 Mass. 90, 137 N.E. 369 (1922), which they read as saying that suspended sentences are not appealable. That case, however, stands only for the proposition that suspended sentences cannot be appealed when revoked; the decision assumes that such sentences may be appealed when im-

This practice, plaintiff alleged, places an unconstitutional burden on the exercise of his right to appeal. His complaint seeks a declaratory judgment that the sentencing practices of Roxbury District Court are unconstitutional, and an injunction, negative in form but mandatory in substance, directing officials of the Roxbury District Court to process his appeal.

We recognize that appellant has a substantial constitutional claim regardless of which version of the facts we accept. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Marano v. United States, 374 F.2d 583 (1st Cir.1967); Worcester v. C.I.R., 370 F.2d 713 (1st Cir.1966). Nevertheless, we sympathize with the district court's view of this complaint as a habeas corpus petition dressed up in equitable garb to avoid the requirement of exhaustion. Habeas corpus is the normal and appropriate remedy for a state prisoner who has been unconstitutionally denied the right to appeal his conviction. Cf. Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951); North Carolina v. Pearce, *supra*. Since exhaustion of state remedies is a prerequisite to relief under the habeas corpus statute, federal courts have been quick to dismiss attempts to disguise habeas corpus petitions as civil rights actions, Still v. Nichols, 412 F.2d 778 (1st Cir.1969), Johnson v. Walker, 317 F.2d 418 (5th Cir. 1963), or as suits for declaratory judgments. Waldon v. Iowa, 323 F.2d 852 (8th Cir.1963).

Plaintiff maintains that no exhaustion should be required in this case because the remedy he seeks is not release from custody, but only equitable relief from the denial of his right to appeal. Where plaintiff sees a qualitative distinction, however, we see only a difference in degree. If defendant had petitioned for habeas corpus in these circumstances, he would not be entitled to immediate discharge from custody, but only to discharge after the state had been given a reasonable opportunity to grant an appeal. Dowd v. United States ex rel. Cook, *supra* at 210, 71 S.Ct. 262. In other words, a federal court acting under the habeas corpus statute would not order state officials to grant an appeal, but would invite them to do so under pain of losing their prisoner. This distinction between equitable command and habeas corpus request does not seem great enough to require a different result.

Moreover, even if we concede the validity of plaintiff's distinction, we think that appellant cannot invoke our equity jurisdiction in the circumstances of this case without resorting to state remedies. Plaintiff challenges our authority to withhold relief pending state court determination on the grounds that the Civil Rights Act provides a supplementary federal remedy which may be invoked without exhausting state remedies. While this may be the general rule, McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), federal courts have traditionally been reluctant to exercise their jurisdiction under the Civil Rights Act to intervene in the state criminal process. In Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), for example, the Supreme Court refused to enjoin threatened state court prosecutions even though the Civil Rights Act conferred jurisdiction. In Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), the Court dismissed a suit to enjoin the use of illegally seized evidence without reaching the question of the power to grant relief under the Civil Rights Act on the grounds that federal courts should not intervene piecemeal into state criminal litigation.

posed. The conduct of the court officials may also be explained by Mass.Gen.L., c. 278, § 25, which permits district court judges to modify the sentence of those who have withdrawn appeals.

*Cf.* Cleary v. Bolger, 371 U.S. 392, 83 S. Ct. 385, 9 L.Ed.2d 390 (1963); Pugach v. Dollinger, 277 F.2d 739 (2d Cir.1960), aff'd per curiam 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961).

In this case, unlike the *Douglas* and *Stefanelli* cases, the state criminal process has already resulted in conviction. Those cases do not, however, turn on the niceties of timing, but on the traditional discretion of the chancellor to deny equitable relief when the public interest so dictates. Stefanelli v. Minard, *supra* at 120, 72 S.Ct. 118; *cf.* Burford v. Sun Oil Co., 319 U.S 315, 317–318, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). Two considerations persuaded the Court to exercise its discretion against relief in *Stefanelli* and *Douglas*: first, constitutional claims can be litigated as readily in state criminal proceedings as in a federal suit for an injunction, Douglas v. City of Jeannette, *supra* at 163; second, absent some showing of harm "both great and immediate", the state courts are the preferable forum because of the strong congressional policy of non-interference in state litigation and because of the serious risk of federal disruption of state law enforcement. Douglas v. City of Jeannette, *supra* at 162–164, 63 S.Ct. 877; Stefanelli v. Minard, *supra* at 120–121, 72 S.Ct. 118.[2]

In this case, the relief which plaintiff seeks would have a substantial disruptive impact on the state's administration of its own laws. Plaintiff has attempted to disguise his prayer in a double negative, but in reality he seeks a mandatory injunction ordering state court officials to proceed in the teeth of existing state practice. Moreover, plaintiff has alleged no special circumstances which would justify equitable relief. The normal risks of criminal litigation, including the risk that constitutional issues will be incorrectly decided, do not justify federal disruption of the state criminal process. Dombrowski v. Pfister, 380 U.S. 479, 484–485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Finally, the state has a substantial interest in considering plaintiff's claim since the allegedly unconstitutional practice seems to rest on a dubious interpretation of state law.[3] We conclude, therefore, that those who wish to challenge the action of a state criminal court must first exhaust available state post-conviction remedies before seeking federal relief whether in the form of a petition for habeas corpus or a suit for an injunction.

Assuming the general applicability of the exhaustion doctrine, appellant has attempted to excuse his failure to proceed in state courts by challenging the adequacy of Massachusetts post-conviction remedies to protect his constitutional rights.[4] The gist of his argument is not that Massachusetts practice provides no remedy, but that it provides too many. Appellant contends that the procedural pitfalls which surround these remedies and the possibility that he will be shunted from one to another render them ineffective to protect his rights.

2. Such reasoning bears close resemblance to the logic which requires exhaustion of state remedies before resort to federal habeas corpus. Ex parte Royall, 117 U.S. 241, 250–252, 6 S.Ct. 734, 29 L.Ed. 868 (1886); Fay v. Noia, 372 U.S. 391, 415–426, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); 28 U.S.C. § 2254(b).

3. This factor alone might justify federal question abstention until state court decision. Harman v. Forssenius, 380 U.S. 528, 534–537, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Note, Exhaustion of State Remedies Under the Civil Rights Act, 68 Columbia L.Rev. 1201, 1205 (1968).

Since, however, there are unresolved factual disputes about the extent to which defendants based their actions on state law, we prefer to rest on the broader grounds of the need to exhaust state remedies. *Cf.* Potwora v. Dillon, 386 F.2d 74, 76 n. 5 (2d Cir. 1967).

4. Plaintiff finally sought state court action after this court denied him temporary relief pending appeal. Counsel informs us that a single justice of the Supreme Judicial Court has released plaintiff on his personal recognizance pending a hearing, yet to be held, on a writ of error.

The gloom surrounding Massachusetts practice is not, however, as Stygian as appellant maintains. Under Mass.Gen. L., c. 250, § 9, the Supreme Judicial Court may issue a writ of error to review factual matters which petitioner has had no legally adequate opportunity to present at trial. Aronson v. Commonwealth, 331 Mass. 599, 121 N.E.2d 669 (1954). This remedy was invoked in Letters v. Commonwealth, 346 Mass. 403, 193 N.E.2d 578 (1963) to reverse a plea of guilty made under threats of heavier sentence, and in Cardran v. Commonwealth, 1969 Mass. Adv. Sh. 1221, 252 N.E.2d 258, to vacate a waiver of appeal made in the absence of counsel. Such decisions indicate to us that a writ of error would lie to review similar occurrences in appellant's case.

 Of course we may be mistaken in our judgment. But this is not a case like Hulett v. Julian, 250 F.Supp. 208 (Md.Ala.1966), in which we can say with certainty that existing state law provides no relief. Nor is this case like Marino v. Ragen, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170 (1947) (concurring opinion), where long experience indicated that the intricacies of Illinois' post-conviction procedures defeated most efforts to obtain relief. On the contrary, the Supreme Judicial Court has shown itself willing to broaden the scope of its post-conviction remedies to accommodate evolving constitutional doctrines. Sandrelli v. Commonwealth, 342 Mass. 129, 141–143, 172 N.E.2d 449, 88 A.L.R. 2d 450 (1961); Cortellesso v. Commonwealth, 1968 Mass. Adv. Sh. 993, 997, 238 N.E.2d 516; Shoppers' World, Inc. v. Board of Assessors of Framingham, 348 Mass. 366, 376, 203 N.E.2d 811 n. 9 (1965). Undoubtedly any such process of judicial reinterpretation will create doubts and leave issues unresolved. When, however, the state courts have shown themselves willing to reconsider procedural barriers and to hear constitutional claims on the merits, such doubtful issues of state law should first be litigated, in the state courts, not in federal district court under the guise of determining the adequacy of state remedies. *See* Hunt v. Warden, 335 F.2d 936, 939–943 (4th Cir.1964).

Affirmed.