Richard DAVIS, Plaintiff,

v.

STATE OF KANSAS et al., Defendants.

No. W-4524.

United States District Court,
D. Kansas.

June 10, 1971.

James Foster, of Foster & Foster, Wichita, Kan., Leon J. Greenspan, of Greenspan, Aurnou & Davis, White Plains, N. Y., for plaintiff.

Keith Sanborn, County Atty., Wichita, Kan., Leonard D. Munker, Asst. Atty. Gen., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER DISMISSING COMPLAINT

THEIS, District Judge.

On January 8, 1971, the plaintiff commenced an action in this Court which purports to be pursuant to the Civil Rights Act of 1871. 42 U.S.C. § 1983. It is this Act, in conjunction with 28 U.S.C. § 1343(3) and § 2201, that the plaintiff urges upon this Court as creating jurisdiction to entertain the present action and grant the injunctive and declaratory relief discussed below. Vern Miller, Attorney General of Kansas, has been substituted as the proper party defendant instead of his predecessor in the office of Attorney General, who was originally named as a defendant in his official capacity. Issue has been joined here by the motion of defendants to dismiss the complaint. The facts as alleged in plaintiff's complaint, and as were developed more fully in a hearing held before this Court on January 25, 1971, are as follows.

On June 17, 1967, the plaintiff was convicted by a jury of forgery and possession of a fraudulent certificate of title to a motor vehicle in violation of K. S.A. 21–113 and 21–616, in the District Court of Sedgwick County, Kansas. On July 10, 1967, the state court sentenced plaintiff to confinement for a period not to exceed seven years on the forgery count, and one to five years on the possession count. The sentences were ordered to run consecutively. The convic-tions and sentences were affirmed by the Kansas Supreme Court on direct appeal. State v. Jarvis, 201 Kan. 678, 443 P.2d 272 (1968).

The defendant Keith Sanborn, Sedgwick County Attorney, has filed an affidavit stating that the plaintiff is, and has been since the commencement of the present action, a fugitive from justice willfully concealing himself from the processes of the State of Kansas. The plaintiff also alleges in his complaint that he "is not physically within the custody of officials of the State of Kansas, but remains at large outside the borders of the State of Kansas subject to immediate arrest." Since the hearing held on January 25, 1971, the Court has been advised by plaintiff's counsel that plaintiff is no longer a fugitive from justice, having been taken into custody by police officers of the State of Utah, pursuant to the warrants and other process of the State of Kansas.

In his complaint, as amended, the plaintiff seeks to have this Court declare that his conviction and sentence are in violation of the Constitution of the United States, and enjoin the State of Kansas from enforcing the same. In the alternative, plaintiff seeks to have this Court treat his complaint as an application for a writ of habeas corpus and similarly rule that his conviction and sentence are invalid. In brief, plaintiff contends that he has been subjected to double jeopardy, cruel and unusual punishment, and denial of due process of law in violation of the Constitution. He also complains of certain evidentiary rulings and jury instructions in the state trial court.

■ For the reason that this action is really nothing more than a collateral attack on a state court conviction disguised as an action under the Civil Rights Act of 1871, and even though this Court may have jurisdiction in the "power" sense to adjudicate the dispute on its merits, which is extremely doubtful under the present state of the law, for the several legal reasons appearing below, the Court determines that the ac-

tion should be dismissed under the doctrine of abstention.

At inception, this Court is met by what appears to be a solid statutory bar under the present state of stare decisis to granting relief under the complaint before the Court. The gravamen of the complaint is that a federal court bar present and future action of state courts to enforce a judgment valid on its face. This judgment of conviction and sentence of the complainant, of course, represents an existing or past judicial action of Kansas state courts. 28 U.S.C. § 2283 is quite clear in saying:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The decisions under this statute, and independently of it as a matter of comity, hold that this area of interference with state court suits, especially in the criminal field, is a red-flag area to be entered into not at all or with extreme caution and hesitancy. In Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965), the Supreme Court found it unnecessary to resolve the question as to whether suits under 42 U.S.C. § 1983 come under the "expressly authorized" exception to § 2283. This Court knows of no new Supreme Court decision since then that has so held, although there is presently before the high court the case of Samuels v. Mackell, and several companion cases, which have already been argued and which will probably give a newer legal view of the meaning of § 2283. Even then, if § 2283 is held to have exceptions, it is almost certainly in those cases where the parties seeking injunctive relief were engaged in organized activities relating directly to free speech, and where the prosecution sought to be enjoined was part of an unconstitutional scheme illegally to regulate or otherwise impinge on their freedom of expression. Indeed, there exist many valid legal reasons why a suit under the Civil Rights Act should not be regarded as an "open sesame" or a judicial remedy superior to and overriding all others, including the Great Writ, as a protector of personal liberty.

The federal courts are quick to dismiss attempts to disguise habeas corpus petitions as civil rights actions due to the fact that exhaustion of state remedies is a prerequisite to relief under 28 U.S.C. § 2254(b). Grayson v. Montgomery, 421 F.2d 1306 (1st Cir. 1970). The same is true of declaratory judgment suits which are in essence habeas corpus applications. Waldon v. Iowa, 323 F.2d 852 (8th Cir. 1963). The Tenth Circuit Court of Appeals has also held that "the Civil Rights Act cannot be used by a state prisoner to circumvent the requirement of 28 U.S.C. § 2254 that state remedies must be exhausted." Hamrick v. Norton, 436 F.2d 940 (10th Cir. 1971). See also, Smartt v. Avery, 411 F.2d 408 (6th Cir. 1969).

Even if this Court were wont to indulge in legal pioneering and find that plaintiff's action is a proper claim for relief under the Civil Rights Act, the federal courts have been most reluctant to exercise their jurisdiction under this Act to intervene in the state criminal process. Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951) (refusal to enjoin the use of illegally seized evidence on the grounds that federal courts should not intervene piecemeal into state criminal litigation); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943) (refusal to enjoin unconstitutional state court prosecution even though Civil Rights Act conferred jurisdiction); and Grayson v. Montgomery, supra (refusal of declaratory and injunctive relief to state court defendant who was denied the right to appeal).

*Stefanelli* and *Douglas* are clear in their teaching that constitutional claims can be litigated as readily in state criminal proceedings as in this Court in an action under the Civil Rights Act for injunctive relief. If federal courts were to initiate a practice of intervening in

actions such as the one at bar, the disruptive impact on the state's administration of its criminal laws would be devastating to the orderly administration of justice. Undoubtedly every person charged with a criminal offense in the state courts (or about to be charged) would prefer to raise any real or anticipated constitutional infirmities, either procedural or substantive, under the Civil Rights Act prior to or during the state criminal proceedings. Fortunately, this was not the intent of Congress in passing the Civil Rights Act, nor is this the interpretation of that Act by the courts. Cf. Douglas v. City of Jeannette, supra, 319 U.S. at 163, 63 S.Ct. 877, 87 L.Ed. 1324.

The application of these principles, usually referred to as the abstention doctrine, might not obtain in situations where a state statute is attacked as abridging a constitutionally protected activity such as free speech and the plaintiff seeks to prevent prosecution thereunder. Dombrowski v. Pfister, supra, 380 U.S. at 489–490, 85 S.Ct. 1116, 14 L.Ed.2d 22. This is not the situation in the case at bar. Here the plaintiff complains essentially of the procedural defects in the state court proceedings which occurred in the past, rather than attacking a state statute which on its face places an unconstitutional limitation on a protected activity.

In *Dombrowski* the Supreme Court recognized that federal intervention during a state's good-faith administration of its criminal laws is inconsistent with our federal framework. The Court also held that it is to be assumed that state courts and prosecutors will observe constitutional limitations and that the "mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." Dombrowski v. Pfister, supra, 380 U.S. at 484–485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22. It does not appear in the instant case that plaintiff has "been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity, by withdrawing the determination of guilt from the state courts, could rightly afford * * * [plaintiff] any protection which * * * [he] could not secure by prompt" return to the State of Kansas and pursuing his post-conviction remedies in the state courts and, if necessary, to the United States Supreme Court. Douglas v. City of Jeannette, supra, 319 U.S. at 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324; Dombrowski v. Pfister, supra, 380 U.S. at 485, 85 S.Ct. 1116, 14 L.Ed.2d 22.

Here, the necessary irreparable harm is not present, nor is there any indication but that the State of Kansas and the defendants herein have proceeded in anything other than good faith. In light of the foregoing, plaintiff is not entitled to the relief he seeks. This brings the Court to plaintiff's alternative request that the action be treated as an application for a writ of habeas corpus.

The clear requirements of exhaustion contained in 28 U.S.C. § 2254(b) have not been met by the plaintiff. In anticipation of this procedural stumbling block, the plaintiff alleges that since he is not presently within the State of Kansas, the remedy of state habeas corpus is unavailable to him. He has not, however, shown that a post-conviction motion pursuant to K.S.A. 60–1507 is either inadequate or ineffective to test the legality of his conviction.

■ Regardless of the present availability or adequacy of state court procedures, it cannot be denied but what the plaintiff's deliberate actions in removing himself from the jurisdiction of the Kansas courts constitutes a deliberate by-pass of available state remedies. The remedy provided by K.S.A. 60–1507 either is available to the plaintiff or he has deliberately by-passed the same. Under either interpretation, habeas corpus will not lie to test the legality of his conviction. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

It is therefore ordered that the action filed by the plaintiff be, and the same hereby is, dismissed without prejudice. The Clerk shall enter judgment accordingly.

It is further ordered that the Clerk transmit copies of this Memorandum and Order to the parties named herein, to their attorneys of record, and to the office of the Attorney General of Kansas at Topeka, Kansas.