Raanan KATZ, Petitioner-Appellant,

v.

Patrick J. KING, Associate Justice of the Housing Court Department City of Boston Division of the Trial Court of the Commonwealth of Massachusetts and Mary Saunders, Respondents-Appellees.

No. 80–1055.

United States Court of Appeals, First Circuit.

Argued April 18, 1980.

Decided July 29, 1980.

As Amended Aug. 1, 1980.

Leslie H. Rudnick, Boston, Mass., with whom Ring & Rudnick, Boston, Mass., was on brief, for appellant.

Barbara A. H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Marilyn L. Hotch, Asst. Atty. Gen., Boston, Mass., were on brief, for respondent, Patrick J. King.

Harvey S. Shapiro, Boston, Mass., on brief for appellee, Mary Saunders.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This appeal from a denial of habeas corpus presents the question whether procedures employed by the Boston [Massachusetts] Housing Court in a criminal contempt prosecution violated petitioner's constitutional right to due process of law. Petitioner raises a host of issues, but the thrust of his appeal is directed towards alleged incompetence of counsel and the sentencing process.

### Prior Proceedings

In early 1978, Raanan Katz, owner-manager of more than one thousand apartment units, sought to evict tenants, Saunders and Lynch, from their Boston apartment. Katz filed a summary process action for eviction in the Brighton District Court, and a damage action seeking back rent in the Brookline Municipal Court. Represented by counsel of the Greater Boston Legal Services, the tenants successfully moved to transfer the actions to the Boston Housing Court. They asserted counterclaims which alleged their entitlement to damages for Katz' failure to properly maintain their

apartment. An important aspect of their defense and counterclaim was an alleged breach, by Katz, of the warranty of habitability because of lack of heat and hot water in their building due to a malfunctioning of the heating plant.

On April 4, 1978, the tenants' attorney, Harvey Shapiro, served Katz with interrogatories and a notice to produce documents detailing the supply of fuel and repairs to the heating system. Katz did not respond. On June 14th, the Housing Court ordered Katz to comply. Again, Katz failed to respond. The tenants made a second motion to compel and, at a hearing held on this motion on June 30, 1978, the court ordered Katz to comply within seven days. When Katz still refused to comply, the court entered judgment for the tenants on Katz' possession and damage actions and ordered Katz to produce the requested materials by August 18, 1978. When Katz once again failed to respond to the court order, defendants' attorney moved to hold Katz in criminal contempt of court.[1] On August 23, 1978, Katz' attorney finally responded to the notice to produce documents by turning over a computer print-out of fuel deliveries by the Atlas Oil Company.[2] His reply to

the notice to produce indicated that the print-out was "the only such full and complete record." Thomas Wirtenan, Katz' attorney at that time, filed the answers to the April 4th interrogatories on August 28, 1978. A show cause hearing was held on the contempt motion on August 29 and September 6, 1978. At the hearing, Katz apparently testified that the delay in complying with the motion to produce arose because he had to request a computer print-out from Atlas which was not immediately available, and had to be especially prepared for him by Atlas. It is not clear from the record whether he testified that it was his usual business practice to destroy records as soon as bills were paid.[3]

A supplemental response to the motion to produce, filed with the court at the September 6th hearing, offered the following explanation for Katz' inability to fully comply with the order.

> With regard to copies of bills, demand, invoices and payment receipts (*including cancelled checks*), requested in paragraph # 2 of the defendant's Notice to Produce, plaintiff responds further that these documents are destroyed shortly after payments are made to the Atlas Oil

1. The Housing Court, established by Mass.Gen. Laws Ann. ch. 185A, inserted by St. 1971, ch. 843, § 1, has concurrent jurisdiction with the district and superior courts to punish contempt. Mass.Gen.Laws Ann. ch. 185A, § 3.

2. The notice to produce contained the following request:

 Copies of all bills, demands or invoices and your payment receipts, and any other records of evidence or payment (i. e., cancelled checks) with respect thereto, pertaining to the provisions of fuel for the heating plant servicing 1932 Beacon Street, for the period January 1, 1977 to the present date.

 The reply filed with the court by Katz' lawyer stated:

 The print-out produced in paragraph No. 1 fully responds to the request of paragraph No. 3 of defendant's notice, as the only such full and complete record.

3. The contempt proceedings were recorded on tape in accordance with Mass.Gen.Laws Ann. ch. 185C, § 18 which provides in pertinent part: "[a]t the trial of any issue of fact, the justice presiding at the trial shall provide for a proper recording system which shall record the proceedings." Although recorded, the hearings of

August 29th and September 6th were not transcribed. We, therefore, have no way of reviewing what transpired on those dates.

In addition, one volume of transcript presented to this court is illegible. U.S.Ct.App. 1st Cir. Rule 11(d) provides: "[p]arties . . . may not, except on motion for cause shown, submit . . . any reproduction that is not black, sharp, and clear." There was no motion for cause shown in this case. The copies are not "black, sharp and clear." We remind lawyers practicing before this court to familiarize themselves with the Federal Rules of Appellate Procedure and the First Circuit Court of Appeals Rules. Failure to so do could result in the loss of valuable rights. *See Kushner v. Winterthur Swinn Insurance Co.*, 620 F.2d 404 (3d Cir. 1980) (appeal dismissed for failure to file appendix conforming to Third Circuit rules); and *United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112, 1113–14 (1st Cir. 1975) (where district court transcript not filed by appellant, court "authorized to take any action we deem appropriate including dismissal . . . ." Review limited to district court's application of law).

Company, and that as such there is no record of payment in existence or in his possession beyond the print-out produced on August 23, 1978. [emphasis added]

The judge found Katz' representations untenable, continued the contempt hearing to October 25, 1978, and ordered Katz and his office manager to produce certain records on that date. Katz was represented by Attorney Wirtenan at the August-September hearing. Joseph Provenzano, the attorney representing Katz at the October 25, 1978, hearing, stated that there was a typographical error in the supplemental response filed on September 6, 1978; the parenthetical "including cancelled checks" should have read "excluding cancelled checks." The checks were produced at the hearing on October 25, 1978.

A second contempt charge arose out of allegedly perjurious answers to two interrogatories. In response to questions seeking the identities of persons who serviced the heating plant in the apartment building, the affiant stated that only the Atlas Oil Company performed work on the heating system. The second answer, relating to a proposed sale of the building, need not concern us as the judge did not find that Katz' answer constituted perjury.

On December 15 and 19, 1978, hearings were held on both contempt motions. Evidence adduced showed that Peter Gianopolous performed work on the heating system; that Atlas Oil was not the exclusive provider of maintenance services to the heating plant; and that bills other than the disputed computer print-out were available to Katz at the time he filed his answer to the motion to produce. At the conclusion of the hearing, the judge announced that he would take the matter under advisement.

On April 24, 1979, Katz' attorney was notified that the opinion was ready and could be picked up at the Housing Court clerk's office. In his decision, the judge ruled that Katz was guilty of contempt because he "repeatedly failed to comply with the Orders of this Court and has perjured himself in his answer to interrogatory number eight and in his testimony before this Court." Noting that "ongoing, repeated, blatant and willful defiance of the authority and power of the Court," the judge held that monetary sanctions were insufficient to punish Katz. Accordingly, he defaulted Katz in the civil actions, awarded attorney fees of $2,000 to defendants, imposed a fine of $5,000, and sentenced Katz to thirty days in the Charles Street jail. As an alternative to the jail sentence, Katz was given the choice of serving eleven consecutive weekends at the jail, or serve one weekend at the jail and perform labor at the Charlestown Development of the Boston Housing Project for two consecutive eight-hour days per week for fourteen consecutive weeks. Katz chose the latter. The judge also found reason to believe that both attorneys representing Katz, Thomas Wirtenan and Joseph Provenzano, had violated Canon 7 of the Canons of Ethics, which are part of the rules of the Supreme Judicial Court of Massachusetts. He referred this matter to the Massachusetts Board of Bar Overseers.

Subsequent to the judgment, Katz' present attorneys moved in the Housing Court to vacate the decision, to stay the sentence, and for a new trial. At the hearing on these motions held on May 7 and 9, 1979, Katz' counsel argued for mitigation of the sentence. The motions were denied, but an amended order correcting errors in the judge's findings of fact was issued. No change in sentence was made, but its imposition was stayed pending appeal.

Katz appealed to the Supreme Judicial Court by writ of error. He alleged due process violations including conviction of perjury without being charged, sentencing in the absence of defendant and counsel, denial of a speedy trial, and ineffective assistance of counsel. He contended his fifth amendment rights were infringed because the court ordered him to take the witness stand and required him to produce incriminating papers. He alleged eighth amendment violations in the form of an excessive sentencing. He claimed that the defendants' private counsel had no standing to prosecute him for criminal contempt. In

addition, Katz attacked the sufficiency of the evidence on the ground that, contrary to the finding of the trial judge, he did not testify that his signature appeared on the perjurious interrogatory.

The SJC rejected all contentions save the argument that counsel and defendant should have been present when sentence was imposed. It found, however, that a subsequent opportunity to present matters in mitigation of sentence cured any defect and refused to order resentencing. The court did not address the competency of counsel issue.[4]

On December 13, 1979, counsel for appellant moved for a new trial in the Housing Court based on the alleged discovery, in May, 1979, of information tending to show that Katz had not signed the perjurious interrogatory. The judge denied the motion on December 20, 1979, by written order in which he also modified the sentence by stating that, if Katz failed to perform the labor, he would be sentenced to thirty days in the Charles Street Jail. The record does not show whether an appeal was taken from these orders.

Appellant then went forward with a habeas corpus motion which had been filed with the United States District Court for the District of Massachusetts on December 11, 1979. Prior to the hearing, the district court granted Katz' motion to depose Attorneys Wirtenan and Provanzano on the issue of conflict of interest. After a hearing on the merits of Katz' petition, the writ was denied. The court, however, was of the opinion that petitioner's claims of ineffective assistance of counsel, imposition of sentence in his absence, and excessive penalties were capable of more than one interpretation, and issued a certificate of probable cause.

## Jurisdiction

We note at the outset that Katz has paid the fine and attorney fees levied against him. Execution of the incarceration portion of his sentence was stayed by the court below pending appeal. We denied the Commonwealth's[5] motion to vacate the stay before oral argument and consideration by this court. Although petitioner has yet to commence his sentence, the impending threat of incarceration renders him "in custody" for purposes of a habeas corpus petition. *Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (petitioner at-large upon his own recognizance "in custody" because only temporary stay prevented incarceration); *Martineau v. Perrin*, 601 F.2d 1201, 1204 (1st Cir. 1979) (parolee "in custody").

Appellant assigns numerous errors to his state trial, some of which suffer from lack of complete exhaustion in the state court. He contends that (1) his lawyers did not provide him with effective assistance; (2) his lawyers had a conflict of interest; (3) the prosecutor had no standing to prosecute criminal contempt; (4) prosecution by the attorney for an interested civil litigant violates due process; (5) the failure to provide allocution was not cured by a subsequent resentencing; (6) he was denied a speedy trial; (7) the sentence is excessive and constitutes cruel and unusual punishment; and (8) the trial judge should have recused himself.

## Exhaustion

Federal-state comity is buttressed by the requirement that state remedies be exhausted before a federal court entertains a habeas corpus petition. 28 U.S.C. § 2254(b) and (c). Bald assertions of law or fact, absent prior explication to the state court of how federal rights were violated, will not suffice. "[T]he federal claim must

---

4. The opinion of the Massachusetts Supreme Judicial Court is reported at 1979 Mass.Adv.Sh. 2581, —— Mass. ——, 399 N.E.2d 1055.

5. Because this is a habeas corpus proceeding, the defendants in the civil action are not proper parties. The matter is now a dispute between appellant and the Commonwealth of Massachu-

setts. Judge Garrity in the proceedings below informed Attorney Shapiro that he was not a proper party to the habeas proceeding. Yet, the attorney submitted a brief to this court. We were not aware of Shapiro's lack of standing until we commenced to read the record.

be fairly presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Where the arguments have not been properly developed in the state court, we will waive the exhaustion rule if "the deprivation of constitutional rights appears prima facie on the face of the record, so that exhaustion can be found in the state court's dismissal of the appeal on procedural grounds." *Delle Chiaie v. Picard*, 445 F.2d 804, 805 (1st Cir. 1971). Inadequate or nonexistent post-conviction remedies in a state court system could provide sufficient justification to overlook incomplete exhaustion. *Grayson v. Montgomery*, 421 F.2d 1306, 1310 (1st Cir. 1970).

The preclusive effect of the exhaustion doctrine applies equally to cases where some, but not all, of a petitioner's issues were raised in the state forum. We have not adopted a *per se* rule that complete exhaustion of all claims in a so-called "mixed petition" is necessary before the exhausted issues qualify for consideration. *See Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978) (requiring exhaustion of *all* claims raised in habeas petitions in Fifth Circuit). *But see Brooks v. Hopper*, 597 F.2d 57 (5th Cir. 1979) (*pro se* petitioner's claim of conflict of interest considered by federal appellate court although nature of conflict not divulged to either state or federal district court). We decline to do so now. Nevertheless, we continue to abstain from review of those claims in a "mixed petition" which were not fairly and fully presented to the state court. We proceed to examine appellant's claims to determine which are ripe for federal habeas corpus review.

## Attorney Conflict and Incompetence

In his brief to the Supreme Judicial Court, appellant offered several theories of how his trial counsel failed to represent him effectively,[6] but did not raise the issue of conflict of interest. In addition, he argued that the Housing court's finding of ethical impropriety of counsel was prima facie proof of ineffective assistance of counsel. At the hearing on the motion for a new trial in the Housing Court, appellant claimed for the first time that the alleged ethical violations amounted to a conflict of interest between the attorneys and their client.[7] The judge noted that, six months prior to that hearing, present counsel knew of Katz' assertion that he did not sign the perjurious interrogatory.

The Housing Court judge refused to consider the forgery claim and denied the motion for a new trial. In the district court, appellant argued that counsel failed to inform him of his right not to testify against himself. Appellant urges that the conflict between his attorneys and himself as to who signed the perjurious interrogatory rendered their representation ineffective.

We cannot help but note that the attorneys who now represent appellant are no strangers to Katz or his litigation problems. They handled legal matters for him before the instant matter occurred. It appears from the record that they recommended

---

6. In the state proceeding, appellant cited the following as instances of ineffective assistance of counsel. The tardiness and non-compliance with discovery orders was attributable to trial counsel, not appellant. Counsel failed to object properly to the order to produce documents. Counsel failed to claim exceptions. They did not challenge the contempt proceedings as the appropriate avenue to prosecute perjury. Had a challenge been made, appellant contended, the case would have been tried in the district or superior court, or before another housing court judge. In addition, a disinterested public prosecutor would have been assigned to the case.

7. The following explanation was given for the failure to present the claim to the Supreme Judicial Court.

It was a case of developing facts, and since we were already before the Supreme Court, and it was judged that if the case were to be retried, that was our hope, and that was our reason that one of the issues that we, as trial counsel in the new trial, what we will bring to the Court's attention will be the facts of the alleged forgery of this particular document, and if the Supreme Court rejected this, we will bring it to your attention immediately. So our client will clearly develop a case, and then at the appropriate time, technically, we will bring it to the Court's attention.

Attorney Provenzano to Katz. Provenzano, in turn, retained Wirtenan, a former rental agent for Katz, on a piecework basis for this and other unrelated cases. Finally, we note that current counsel was present in the Housing Court for, at least, some of the contempt proceedings.

■ This is not the usual case of conflict of interest where an attorney is representing two codefendants in the same case. The conflict here, if there is any, arises because the client claims his lawyer signed the answer to an interrogatory which the court found to be perjurious. Until the finding of perjury was made, there was no conflict unless the forgery was so obvious that the lawyers knew it would be discovered. We cannot say that the conflict of interest was so blatant that either the trial court or appellate court should have recognized *sua sponte* that Katz' lawyers may have been more interested in avoiding a perjury charge than representing him adequately. "While with hindsight one can find in the state court record seeds of the argument, so vigorously urged in the federal court, . . . the seeds never came to visible fruition." *Needel v. Scafati*, 412 F.2d 761, 765 (1st Cir.), cert. denied, 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113 (1969). Katz must fully and accurately present his conflict claim to the state before we can consider it.

■ In addition, appellant contends that, because of the conflict, his attorneys could not render effective assistance. Whatever merit may be inherent in this assertion, the exhaustion doctrine precludes our considering it. Appellant also claims that his attorneys were incompetent. His brief, however, points to no specific instances of incompetency at the state trial. Rather, it directs us to arguments posed in the Supreme Judicial Court brief which it incorporates by reference. FRAP 28(g) limits principal briefs to fifty pages. If counsel de-

sires our consideration of a particular argument, the argument must appear within the four corners of the brief filed in this court. Attorneys cannot circumvent FRAP 28(g) by incorporating by reference a brief filed in another forum.

■ Appellant contends that the prosecution of his case by Shapiro, who had a financial and professional interest in the outcome of the civil proceedings, violated the due process requirement of fundamental fairness. Appellant, however, did not raise this constitutional claim in state court on his appeal, and thus is foreclosed from raising it here.[8]

### Sentencing Procedure

Appellant mounts a two-pronged attack on the sentencing procedure employed by the trial judge. He asserts that (1) a subsequent rehearing did not cure the defect inherent in the imposition of his sentence *in absentia* ; and (2) the failure of the judge to order a presentence probation report tainted the sentence.

Four months after trial, the Housing Court clerk notified appellant's attorney that the opinion was ready. The opinion provided for sentencing. At trial, the court had not provided appellant with the opportunity to address the court on matters in mitigation of sentence. After receiving the opinion, appellant's second set of attorneys moved for a new trial, vacation of judgment, and stay pending appeal. At the hearing on these motions, appellant's lawyer made a lengthy, emotional appeal for reconsideration of the jail sentence. Katz' attorney reminded the judge of a criminal defendant's right to address the court before sentence is imposed, but the judge did not invite the petitioner to speak on his own behalf. The record does not indicate whether petitioner was present; it is clear that petitioner did not say anything him-

---

8. Appellant did argue that Shapiro did not have standing under state law. The Massachusetts courts rejected this argument on the authority of state law, Mass.Gen.Laws Ann. ch. 185, § 19; *Commonwealth v. Haddad*, 364 Mass. 795, 308 N.E.2d 899 (1974). Appellant's challenge to this interpretation of state law by the Supreme Judicial Court is inapt, relying as it does on several of our holdings under federal law in the course of exercising supervision over the federal district courts, *see In re Lahm Industries, Inc.*, 609 F.2d 567 (1st Cir. 1979).

self. The judge denied appellant's motions, but did postpone imposition of the sentence until after the appeal.

The Massachusetts Supreme Judicial Court held that the initial sentencing procedure was defective, but found there was a resentencing at the hearing on the motions for a new trial and vacation of judgment which cured the defects of the original opinion sentence, *i. e.*, neither defendant nor his counsel had an opportunity to present matters in mitigation.

 A defendant is entitled to effective representation by counsel at each critical stage of the criminal process. Sentencing is a critical stage. *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967). And the sentencing procedure must comport with the requirements of due process. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977); *Haller v. Robbins*, 409 F.2d 857 (1st Cir. 1969). But the parameters of the due process to be accorded at sentencing are not firmly fixed. It is not certain whether due process incorporates the right to be present in person at sentencing. *Thompson v. United States*, 495 F.2d 1304, 1306 n.5 (1st Cir. 1974). Nor is it established that allocution—the opportunity to address the court prior to the imposition of sentence—is more than a statutory right. *McGautha v. California*, 402 U.S. 183, 218, 91 S.Ct. 1454, 1472, 28 L.Ed.2d 711 (1971); *United States v. Leavitt*, 478 F.2d 1101, 1104 (1st Cir. 1973). The Supreme Court has held that the failure to accord allocution to a defendant represented by counsel is not an error of constitutional dimensions. *Hill v. United States*, 368 U.S. 424, 428–29, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

 Underlying the right to allocution, be it statutory or constitutional, is the theme that matters in mitigation of sentence should be fairly presented to a sentencing judge prior to rendition of final sentence. *Roberts v. United States*, 445 U.S. 552, 556–559, 100 S.Ct. 1358, 1362–

64, 63 L.Ed.2d 622 (1980) (defendant has affirmative obligation to assert reason for silence at allocution). Katz' attorney argued strenuously in mitigation at the motion hearings held subsequent to the opinion sentence. In postponing imposition of the sentence, the judge noted that he thought the original sentence was fair. We agree with the Massachusetts Supreme Judicial Court and the district court that there was a resentencing which cured any possible constitutional defects of the opinion sentence.[9]

 Appellant asserts that the Housing Court judge erred in failing to order a presentence report. Although a presentence report serves as an aid to the court in the imposition of a just sentence, a defendant has no right to one. *Howard v. Maggio*, 540 F.2d 1280, 1282 (5th Cir. 1976), and its use is a matter of discretion for the judge. *Hazelwood v. Arnold*, 539 F.2d 1031 (4th Cir. 1976). The failure to use a presentence report is not of constitutional dimensions.

### Other Claims

 Appellant claims that the four-month delay between completion of trial and entry of verdict violated his sixth amendment right to a speedy trial. The Supreme Court has never specifically ruled that the right to a speedy trial incorporates the right to a speedy sentence. But, in *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), it assumed, without deciding, that the "sentence is part of the trial for purposes of the Sixth Amendment." We shall follow the lead of the Court and assume, *arguendo*, that the sixth amendment encompasses a right to a speedy sentence. *United States v. Campisi*, 583 F.2d 692, 694 (3d Cir. 1978). In the cases collected in *Campisi, supra* at 694 n.5, courts have found delays in sentencing of up to twenty-nine months not to be excessive. Delays found to be excessive all exceeded five months. The delay here was

---

**9.** Since the Massachusetts courts have not had an opportunity to address the question of whether appellant's sentence was improperly enlarged on December 20, 1970, at 573, this issue is not properly before us.

four months, which we find not unreasonable and certainly not of constitutional dimensions.

 We find little merit in Katz' claim that the sentence amounted to cruel and unusual punishment. The sentence, while undoubtedly severe as far as Katz was concerned, did not in any way approach the constitutional line marking cruel and unusual punishment.

Katz also asserts that the default judgment on his civil claims and the tenants' counterclaims without a trial on the merits constitutes a taking of property without due process of law. This issue cannot be considered by us in a habeas corpus proceeding which is bottomed on a bodily restriction of one's freedom.

The remainder of appellant's claims merit little consideration. His allegation that he should have been indicted for perjury, a crime punishable in Massachusetts by twenty years in prison or up to two and one-half years in jail, and/or a one thousand dollar fine, Mass.Gen.Laws Ann. ch. 268, § 1, is groundless. In finding Katz in contempt, the court took into consideration his perjurious answer to an interrogatory. It is perfectly proper for a trial judge to evaluate a defendant's truthfulness when imposing sentence. *United States v. Grayson, supra,* 438 U.S. 41, 52–55, 98 S.Ct. 2610, 2616–2618, 57 L.Ed.2d 582.

Appellant's contention that the trial judge should have recused himself because the contemptuous conduct constituted an affront to the judge personally fails for two reasons. First, the conduct was not a personal attack on the judge. *See Mayberry v. Pennsylvania,* 400 U.S. 455, 456, 91 S.Ct. 499, 500, 27 L.Ed.2d 532 (1971), where, among other accusations, the defendant called the judge a "dirty son of a bitch." Secondly, there was no request for recusal. Only on the last day of trial did appellant suggest that the judge should have recused himself because the contemptuous conduct constituted an affront to the judge. Although the judge asserted that he would have considered recusing himself had a mo-

tion been made early in the trial, this argument is foreclosed because the contemporaneous objection required under Massachusetts law was not made at the appropriate time. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

*Affirmed.*